Et al. Oral argument not to exceed 15 minutes per side. Mr. Boardman, for the attorney. Good afternoon, your honors. Good afternoon. Mr. Boardman appearing on behalf of the appellants Ted and Maria Gatzaros. The issues in this case are pretty clear. By the way, how much time do you want to reserve? Three minutes. Okay. There's basically two issues in this case. Whether or not the Gatzaros's, the appellants in this case, had the right under the guarantee to modify the funding obligations in the guarantee without notice so that they are no longer subject to restrictive limitations, which prevented the repayment of the loan. And the other issue is whether or not the appellees in the guarantee had waived each and every contract defense that they had. We stand here before you to state that the language in the contract or the guarantee is pretty clear. The language provisions is clear and unambiguous and must be enforced as written. Section 8 of the waivers specifically stated that the appellants had the right to modify the terms of any funding obligation without notice. There was only one funding obligation, and that funding obligation was defined in Section 2 of the guarantee. And it specifically stated the terms of that funding obligation in Section 2 states that subject to the limitations set forth in the guarantee, the appellees have a duty to fund the subscription amount when due. The term limitation is in that funding obligation. So therefore, as the limitations are a term of the funding obligation, the appellants had the right under the waiver provision to modify the funding obligation without notice so that those limitations, those restrictive limitations, were no longer applicable. The language is clear and unambiguous and must be enforced as written. Let me ask you a question. Paragraph 10 of the guarantee agreement makes reference to the waiving party having to agree to a change in the funding obligations, which I presume that's a reference back to the funding obligations, paragraph 2. Now, the reference in paragraph 10 to the waiving party, who is the waiving party under that paragraph? Under paragraph 10? Yes. I mean, the waiving party in this case is the appellees in this case, the tribe and the authority. Well, wouldn't that mean that the funding obligation couldn't be changed without the consent of the defendants? If the defendants are the waiving party and they have to agree to a change in the funding obligation? No, the law is pretty clear on an issue between whether there's general terms and specific terms. And in this case, there's a general obligation to give notice to waive any of the other terms in this guarantee. However, there's a specific term. The specific term regarding waivers set forth in paragraph 2, or paragraph 8 entitled waivers. And specifically, it says when it comes to the funding obligations and solely the funding obligations, that you can modify those funding obligations without notice. Well, I know that. I know that. I mean, that's why it seems that the two paragraphs are at odds with one another. But this one comes first. So this one must be the – You mean numerically comes first? Yes, and that's important because if there's a contradiction between two separate terms, the one that comes first is the one that's enforced. And in this case, it's also a specific term. We're talking about only the funding obligations. So when you're talking about modifying the funding obligations, you can do it without notice. It's clear on that. And it's not really a conflict. Well, it didn't look clear to me, but continue with your argument, if you would. Well, the district court basically stated, and their argument was, that the terms of the waiver, they weren't talking about the funding obligations. They were talking about an underlying debt. And basically, there's a provision in the law which says that when an obligee and an obligor want to make a modification to an underlying debt, they can do so only if they have the consent of the guarantor. And generally, what they do is they put a term in the guarantee which says that the guarantor waives any notice to such modification. That's not what we have here. There is no statement in the waiver provision that refers to a modification of the underlying debt. The underlying debt is called the subscription amount, and that's owed by the Ketowin Gaming Authority, or Ketowin. The underlying debt is not the funding obligation. They are separately defined by the guarantee. So for the court to change the definition of the funding obligation to make it the underlying debt, to say that you have to, that we're trying to change the underlying debt and that's impermissible, is incorrect. And the court erred on that. Essentially, in this case, the language is clear and unambiguous. There's language in the funding obligation which allows the appellants, refers to the limitations, and they can be modified. And that's exactly what happened here. The language needs to be enforced as written. In terms of the other issue regarding the defenses in this case, the waiver, again, stated that any and all defenses that relate to, of any nature, that arise under the principles of guarantee and suretyship are waived. The district court basically said that the contract defenses, since they're not included in the restatement of guarantee and suretyship, their contract defenses are thus not waived. However, the principles of any guarantee, and this is even in the restatement of guarantee, they all arise out of contract. Therefore, if there are going to be any defenses, they also would include contract defenses. And we would state that those contract defenses that they've raised in this case have been waived. And it was incorrect for the district court to state otherwise. They have not raised any case which states that the restatement controls in this case. And further, if the waiver was to be limited to defenses set forth in the restatement, it would have limited those defenses. It specifically would have included language limiting it to the restatement. Why would it have to have language specifically limiting it to the restatement? Why would it have that? I mean, wasn't this pretty standard language? No, because it was modified to this particular agreement. I mean, this agreement talks about, on the one hand. So it was standard language picked up and used in this agreement, but you think the terms of this agreement modify its applicability. Well, let me say this, that the statement itself may be standard, but it isn't standard to the extent that it precludes any contract defenses. It says of any nature under the principles of guarantee and suretyship, a principle is defined as those things which arise out of something in the beginning. The beginning of how you look at any guarantee is based in contract. So to say that contract defenses are not applicable would go against even what the restatement says. The restatement, Section 5, specifically says that you apply law and equities, and including the law of contract. So how can you avoid contract defenses when the principles of guarantee and suretyship include contract? Well, then, wouldn't that argument be the same for every time any contract makes that standard language recommendation? Yes. So any time they use that language, you think it is a waiver of all contract defenses? I think it is. I think it is, because when you say of any nature, and, I mean, maybe there's others that limit what this is, but it says of any nature arising out of the principles, and any nature arising out of the principles, a guarantee is in itself a contract. To say that you can't apply a principle of what a guarantee is in this situation would be opposite of applying a principle of a guarantee. So I believe that the principle of contracts applies. And, again, Section 5 of the restatement itself specifically says that the law of contracts applies. So you can't just avoid defenses. They have not cited one case which says when somebody raised a defense of a contract defense that it was inapplicable. Just to wrap up, I know I've got two minutes, but, again, this is a pretty simple case. I mean, the language is here. The language is here, and it's clear and unmistakable. The waiver says that you can make modifications to the funding obligation. That's what happened here. A modification occurred to the funding obligation. One of the terms of that funding obligation included limitations. Those limitations were modified. We were allowed to do that without notice. And we would also contest that the defenses, including contract defenses, were waived in this case, and, therefore, we should be able to proceed forward with our declaratory action. Thank you. Thank you. Good afternoon, Your Honors. I'm Grant Cowan. I'm here for the Appalese, the Sault Ste. Marie tribe of Chippewa Indians, and the Quaden Casinos Gaming Authority. And with your permission, I'll just refer to them collectively as the tribe, as we have in our briefs. Your Honors. Why wasn't the arbitration clause enforced? Well, the action was initiated by the plaintiffs, and the tribe elected not to join it and ask for arbitration, which it's a waivable provision. Your Honors, we believe that there are four critical, undisputed facts in this case. The first is that the guarantee is a limited guarantee. The tribe agreed to guarantee the underlying debt only under certain very limited circumstances. And that limitation, that substantial limitation, is set forth in a specific provision in the guarantee. It's in Provision 3, Paragraph 3 or Section 3. So that's the first. Second, the guarantee was never triggered. That fact is not in dispute. The tribe never received distributions from the casino that exceeded that agreed-to floor that is the limitation. And the Getseros several times in their brief acknowledge the guarantee was never triggered. Third... What would have been necessary for that to be triggered? Because of the limitations. So the tribe only agreed to guarantee the underlying debt if the tribe had received a certain amount of distributions from the casino that exceeded agreed-upon floor. It was a very limited guarantee. The agreement keeps referring to the subscription amount. Is the subscription amount different from the underlying debt? No. That's essentially the debt is the subscription amount. So what happened is the Getseros, along with another partial owner of the casino, were bought out. And they essentially subscribed their shares or their shares were bought out to be paid over time. Monroe Partners bought back those shares. Monroe then immediately subscribed the shares to Kuwaitan Casino, a separate entity, not within the tribe definition. Kuwaitan and Monroe are party to a subscription agreement. And the subscription amount is Kuwaitan says when the payments are due to the Getseros come due, when Monroe has to make those payments, Kuwaitan will provide the payments to Monroe so they can pay it. Those are called the subscription amounts. And the subscription agreement between Monroe and Kuwaitan obligated Kuwaitan to get a limited guarantee from the tribe, very limited in the sense that the tribe would only have a guarantee obligation if it received money from the casino that was in excess of an agreed-upon floor. The reason we're here is because that limitation never occurred. The guarantee was never triggered. The whole reason we're here is because they want to remove the limitation provision. The third undisputed critical fact, Your Honors, is that the guarantee contains a clear and unambiguous no modification provision. And Judge Clay, that's that provision in Section 10. No modification or change to the terms, to any of the terms of the guarantee agreement, may be made without my client, the tribe's written consent. That's in paragraph 10 of the guarantee. And the fourth critical fact, Your Honor. Before you leave that point, what about that the language in paragraph 2 seemed to be in contradiction to the language in paragraph 10? So, Your Honor, we agree with Judge Borman below that the two paragraphs are not inconsistent. And I can explain why. I was going to mention my fourth point. But let me go ahead and address your question. So as the appellants acknowledge, as the Getzeros acknowledge, in a standard guarantee agreement, if something is done to the underlying debt, so if Kowaden and Monroe did something to change that underlying debt under standard guarantee law, it relieves my client of guarantee obligations. If they change the timing, if they change the amount without my client's consent, we're off the hook. That's standard guarantee law. They acknowledge it in their brief. So that is why all modern guarantees today have that standard language that's in paragraph 8, that is the waiver provision, that says essentially my client agrees that if something is done to the underlying debt, we're not released. That standard language is lifted word for word from a form agreement for that type of a provision. And so all that Section 2 is saying is that Section 2 says subject to the terms of the guarantee, terms which cannot be modified without my client's consent, subject to those terms, my client agrees to guarantee the underlying debt, the subscription amount. And the waiver provision just simply says, standard language, that if that underlying debt is modified without our, we do not have to get notice of presentment. It is entirely consistent with paragraph 10, which says as to the terms of the guarantee, not the underlying debt, not the subscription amount, not those agreements that the tribe is not party to, as to the terms of the guarantee, you have to get our consent if you're going to change it. What's the single most important provision in the guarantee agreement? The limitation. It is a provision that is separate and apart from paragraph 2, the funding obligation. And so, your honors, the fourth point is that the limitation provision, paragraph 3, is a term of the guarantee agreement and it cannot be modified without my client's written consent. That's me saying it and that's the appellant saying it. In their brief before the district court, they said, plaintiffs also agree with defendants, that they cannot modify any other provision in the guarantee, including the limitation provision, paragraph 3, without the tribe's written consent. So the key issue in the case then is, have they attempted to modify a term of the guarantee agreement without the tribe's written consent? And we submit to you, your honors, the answer to that is unequivocally yes. The focus needs to be on what is the purported modification? What is the language by which they purport to modify the agreement? It is in the letter that they sent and is in their briefs. This is the operative language. This is the modification language. As of October 17, 2012, the guarantee is no longer subject to the section 3 here under, entitled limitation. The purported modification essentially eliminates the limitation provision. Paragraph 3, not the funding obligation. All they did is they stuck that sentence in the funding obligation paragraph, thinking that they can do that and remove another section of the guarantee. Are they permitted to do that? Unquestionably no. They purported to modify a term of the guarantee agreement by removing the limitation provision, and they admit that they are not permitted to do that under the unambiguous terms of the guarantee agreement, that no modification provision. They acknowledge we cannot change paragraph 3. That's exactly what they purport to do. They say the guarantee is no longer subject to that provision. You know, it seems as though the way in which some of these provisions relate to one another is not clear from the four corners of the agreement itself. In other words, some of this has to be explained, just as you've been doing this morning. And it sort of makes one wonder if there's a problem of ambiguity, or if not ambiguity, at least a situation that requires extrinsic evidence to assist arguments of counsel, maybe. Your Honor, there's not anything that I'm sorry. I didn't mean to interrupt. I thought you were done. Well, go ahead. I mean, it just looks like we need some extrinsic explanation or evidence or whatever to see what provisions are superior and inferior and how they relate, because it's not necessarily clear from the face of the agreement. Isn't that a little bit of a problem? I respectfully submit it's not, Your Honor, because there's not a thing that I've said that has come from anything but the four corners of the agreement. I haven't even gotten into the principles, the cardinal principles of contract construction. I've said simply look at the language. Paragraph 2 says subject to the limitations, terms, and conditions of the guarantee, subject to everything that's in the guarantee. Paragraph 10 says you can't change a term of the guarantee. They want to change Paragraph 3 by removing it. We have their purported modification. You just look at it and read it, and it says the guarantee is no longer subject to the limitation. There's not a thing that I've said that comes from anything other than a clear reading of the contract, and that's what Judge Borman found. And I think when you look at the principles of contract construction, I think when you layer on, Judge Clay, your question with the principles of contract construction, I do think that you can very easily get there, at least I respectfully submit that you can. The first is that the courts are supposed to construe these contracts consistent with common sense and in a manner that avoids absurd results. They should construe it in a way that gives effect to each term or phrase, wherever practical. And the third, and perhaps the most important, is that a guarantee is to be strictly construed in favor of the guarantor. So let me just, I have about four minutes remaining, let me kind of quickly talk about some of those principles. As I said, when you're looking at common sense and you're regarding the waiver provision, Paragraph 8, the one that they want to rely upon, and I've talked about the fact that that language is clear and consistent with general guarantee law that wants to protect them if something's done to the underlying obligation. Giving effect to each term or phrase. There is one misstatement in the Getzeris brief, and I don't say that pejoratively, I don't mean to suggest that they did anything untoward, it's just an incorrect statement, and that is they say Section 2 states limitations are a term of the funding obligation. It doesn't. It says that the limitation terms are part of the guarantee agreement. And that the term that they are, as I've said, trying to remove is the guarantee. The limitation is not found in the funding obligations. It is found in the guarantee. Now here's, I think, Your Honor, perhaps the most important one, and that is giving it a construction that avoids an absurd result. If you allow them to do the purported modification that they are trying to do, it produces an absurd result. Paragraph 2 says, under their purported modification, the funding obligations are not subject to the limitations. Next paragraph, the funding obligations are subject to the limitations. It produces an absurd result, and Judge Foreman, frankly, hit upon that and found that. In my remaining time, let me just talk about. Excuse me. You said paragraph 2 were not subject to the limitations. Paragraph 2 starts off saying subject to the limitations, so maybe I'm not following. Subject to the limitations terms in the guarantee. They're not in the funding obligation provision. They're in the guarantee, paragraph 3. Okay. All right. Finally, Your Honor, this point about waiving defenses and following up on Judge Stranz's questions, this is not the waiver provision. It is a customary waiver of defenses under principles of suretyship and guarantee, which would otherwise operate to impair or diminish the tribe's guarantee obligations. This is not, like some of the cases that they cited, this is not a waiver of any and all defenses of the tribe. It's a very limited, specific, but customary waiver of defenses that are based on principles of guarantee and suretyship, such as those defenses are generally outlined in the restatement, which the Michigan courts follow. Things like release, extension, or modification of the underlying debt, that's a suretyship defense. Impairment of collateral, that's a suretyship defense. Impairment of recourse, that's a suretyship defense. There is no waiver of any and all defenses or contract defenses. The case that they cite on the point about waiving contract defenses is the 31800 Wick Road holding case from the Eastern District of Michigan, 2012 decision. And that case stands for the simple and unremarkable proposition that under Michigan law, promissory notes, mortgages, and guarantees are to be construed as ordinary contracts. That is the case that they rely upon to suggest that the waiver provision of suretyship and guarantee defenses includes any and all defenses that are contract-based. I thank you for your time, Your Honors. Thank you. Let me ask you first, Counselor, how do you respond to the argument that the waiver in paragraph 8 clearly addresses unconditionally and irrevocably waive each and every defense and set off of any nature which under principles of guarantee or suretyship would operate? I'm struggling with how you can take that very defined language and say that it waives any contractual defense you may have to this entire agreement. Because it says each and every defense of any nature under the principles of guarantee and surety. When we say principles of guarantee, what is a principle of guarantee? Even the restatement under section 5 says that a principle of guarantee is that it's based upon contract. Therefore, contract defenses are part of a principle of guarantee. They are connected. So you take the position that under that language, you might have a waiver for any written contractual error? Yes. So if you hadn't signed the agreement or they hadn't signed the agreement, is there a waiver? There can be any contract defenses to this agreement because it says of any nature. I mean, it doesn't say specifically what's in the restatement. It says of any nature under the principles. You can't remove those words and just say under the defenses that are listed under the restatement. I guess what I'm struggling with is I don't see how that makes common sense that you have a waiver provision in a contractual document that says I'm waiving guarantee and surety ship, and oh, by the way, I'm raising every contract defense I would have. What do you have by way of a meeting of the minds if the body of the document waives any challenge under traditional contract law? First of all, there are waivers that are drafted much broader than this that specifically state that you can waive any and all contract defenses. But this waiver itself is not just limited. But this one doesn't. I guess what I'm struggling with is if there are normal contract provisions in which people say I waive contract defenses, and then there is a standard guarantee and surety ship provision that is routinely incorporated into agreements, don't those two mean something different? Yes, they do because we're not waiving. But not under your argument here. I'm not waiving every defense under the world. I'm saying what arises under the principles of guarantee, and specifically under the principles of guarantee are contract defenses. You can't have a guarantee without a contract. But doesn't that smaller exception then gobble up the whole? It doesn't gobble up the whole, but what it does is because it's just. . . Why doesn't it? Some people have to write I waive contract defenses, and other people can only write the standard guarantee and surety ship language, and then they get the contract ones thrown in. The standard contract defenses come under the word principle of guarantee. It's a principle. It is of any nature, they use the word any nature, under the principles. If you say that we're just limiting it to what's under the restatement, then you have avoided the language of any nature and principles, and I think you can't do that. Thank you. Thank you. Thank you, and the case should be submitted. Before the next case is called, The court will take a brief recess, probably approximately five minutes or so. Thank you. Perfect. Thank you. I'm just kidding. It's supposed to be late. Yeah. Tomorrow. Late tonight, early tomorrow. I live far away from home. I don't have to traverse great distances like a lot of my colleagues. Oh. Neuros. That's what it is. Right. I can't. I'm going to get up there and look. Oh, no, you're going to take a look. Hey, man, I didn't stress for you. I'll be all right. Yeah. I was a witness. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah.